UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

$50,000.00 IN U.S. CURRENCY SEIZED FROM WASHINGTON MUTUAL SAFE DEPOSIT BOX NUMBER 00027392676,

        Defendant.

SHANE WELCH AND TIM JASON ALLEN,

        Claimants.

CASE NO. CIV. S-04-2397 WBS KJM

MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

----oo0oo----

        Claimants Shane Welch and Tim Jason Allen move for summary judgment in response to the government's civil forfeiture proceedings, which were brought against claimants' $50,000 pursuant to 21 U.S.C. § 881(a)(6).

///
///
///

1

I.   Factual and Procedural Background

On June 22, 2004, officers of the Roseville Police Department executed a state search warrant issued on June 21, 2004. (Compl. ¶ 5(a)). The warrant authorized the search of Welch's person, his cars, and his residence located at 1115 South Bluff Drive, Roseville, California. (Id.; Pl.'s Opp'n to Mot. for Summ. J. Attach. 1 (App. of Evidence, June 21, 2004 Search Warrant)). The forced entry search of the residence began around 4:55 p.m. while Welch was not present. (Pl.'s Opp'n to Mot. for Summ. J. Attach. 2 (Undisputed Facts) at 2). During the search, officers discovered, among other things, two marijuana buds, sheets listing names next to numbers (presumed by the police to be pay/owe sheets), a receipt for a safety deposit box at Washington Mutual, $1,342 in cash, a digital scale, gallon size zip lock bags, and cups and bowls containing what officers thought to be marijuana residue. (Pl.'s Opp'n to Mot. for Summ. J. Attach. 1 (App. of Evidence, Property Record)). They also found Welch's May 30, 2004 pay stub from Ameriquest Mortgage stating an annual salary of $27,000, (id.), and his tax returns for 2002 and 2003, documenting Welch's gross income: $15,529 in 2002 and $19,468 in 2003, (Compl. ¶ 5(c)).

The officers finished their search before Welch returned home. However, after being notified of Welch's arrival at the residence, Officers Michael Easter and Bryan Fritsch went back around 11:01 p.m. to complete the search authorized under the warrant. (Pl.'s Opp'n to Mot. for Summ. J. Attach. 1 (App. of Evidence, Property Record and Easter Decl. at 2-3)). Officer Fritsch initiated contact with Welch and assisted with Officer

1  Easter's search of Welch's person and his 2001 Lexus.
2  (Claimants' Mot. for Summ. J. Ex. A at 16, 22, 39). Both Welch
3  and his vehicle were on a public street at the time of the
4  search. (Id. at 39). On Welch's person and in his car, the
5  officers found: $4,758 in cash, 17 Vicodin tablets, a receipt for
6  the Lexus indicating that Welch paid $38,000 in cash for it, and
7  marijuana residual (in the trunk) (Compl. ¶¶ 5(d), (f)). The
8  officers also seized Welch's keys, including a key for a safe
9  deposit box at Washington Mutual Bank. (Id. ¶ 5(i)).

10         Based on his experience as a narcotics investigator and
11 some of the evidence obtained while executing the June 21st
12 warrant, Officer Easter applied for and received a warrant to
13 search safe deposit box number 0002-0000739 0000267 6 at
14 Washington Mutual Bank in Citrus Heights, California. (Pl.'s
15 Opp'n to Mot. for Summ. J. Attach. 1 (App. of Evidence, June 23,
16 2004 Search Warrant No. 63-11110, Easter Aff.)). Officer
17 Easter's affidavit did not mention the safe deposit box key, but
18 did refer to the cash, Vicodin, and Lexus receipt found on
19 Welch's person. (Id.). The police executed this second warrant
20 for the safe deposit box on June 23, 2004 and, using the key
21 found during the June 22nd search, recovered the title to the
22 2001 Lexus and the $50,000 at issue in this civil forfeiture.
23 (Compl. ¶¶ 5(g), (j)). Officer Fritsch's drug detection dog,
24 Blax, alerted to the presence of an illegal substance when
25 presented with the Bank of America deposit bag containing the
26 $50,000. (Id. ¶ 5(j)).

27         On July 22, 2004, the Placer County District Attorney's
28 Office filed a complaint, alleging that Welch violated Cal.

3

1  Health & Safety Code §§ 11350, 11351, 11352, 11357(b) (covering
2  possession and sale of controlled substances).  (Pl.'s Opp'n to
3  Mot. for Summ. J. Attach. 2 (Undisputed Facts) at 3).  During the
4  ensuing state court proceedings, all evidence from the search of
5  Welch's person and car was suppressed because the warrant did not
6  provide for nighttime service, as required by Cal. Penal Code §
7  1538.5.  (Id. at 2).  Consequently, the charges relating to
8  possession of the 17 Vicodin tablets were dismissed, leaving only
9  a misdemeanor marijuana possession charge.  (Id. at 6-7).  Welch
10 pled guilty to this count and paid a $100 fine.  (Id. at 6).

11         The United States Drug Enforcement Agency adoptively
12 seized the $50,000 from Welch's safe deposit box on July 22,
13 2004, pursuant to 21 U.S.C. § 881(a)(6) (permitting the
14 government to seize and forfeit money "furnished or intended to
15 be furnished by any person in exchange for a controlled
16 substance").  (Compl. ¶ 3).  The government, as plaintiff in this
17 case, filed suit on November 10, 2004 for forfeiture in rem to
18 establish its right to the money.  (Id.).  Claimants objected to
19 the forfeiture and have filed the instant motion for summary
20 judgment to divest the government of the $50,000.
21 II.  Discussion
22         In their motion for summary judgment, claimants argue
23 that the evidence used to secure the search warrant for the safe
24 deposit box was obtained through an illegal search and seizure.
25 (Claimants' P. & A. in Supp. of Mot. for Summ. J. at 4).  Based
26 on that, they conclude that neither the evidence supporting that
27 warrant nor the fruits of the search it authorized could be used
28 to establish probable cause in this civil forfeiture case.  (Id.

4

1 at 3-4).

2 However, this court finds that the currency was not illegally seized, regardless of legality of the 11:01 p.m. search of Welch and his car. As the government correctly notes, "[t]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant." United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987). Instead, the Ninth Circuit directs reviewing courts to "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." Id.

Here, even if the court strikes references to the $4,758 and the Vicodin tablets found in Welch's pockets, the receipt for his Lexus, and his statement that "he had stopped 'Big time' drug dealing one month ago," the affidavit would still provide sufficient support for the magistrate's finding of probable cause to search the safe deposit box. (Pl.'s Opp'n to Mot. for Summ. J. Attach. 1 (App. of Evidence, Easter Aff. for Warrant No. 63-11110 at 2-3)). The portions documenting Officer Easter's extensive experience as a narcotics investigator, the June 21st warrant (incorporated as an attachment) authorizing a search of Welch's person, car, and home for evidence of marijuana sales, and the evidence recovered pursuant to the 4:55 p.m. execution of that warrant are untainted by the allegedly illegal 11:01 p.m. search.[1] (See id.). Although "the quantity of drugs

---

[1] Untainted evidence from the 4:55 p.m. search includes: "two guns, [$1,342] in cash, pay/owe sheets, electronic scales, drug packaging material, . . . bank statements and records

5

located on Welch" and "his statement that he was involved in selling in the past" were obtained during the later search, the same cannot be said for "all the indications that he was involved in the sale[] of controlled substances." (Id.). These indications included both the pre-search information that served as the basis for the initial June 21st warrant as well the evidence obtained during the execution of that warrant. Moreover, the evidence used to identify the place to be searched authorized by the June 23rd warrant--the safe deposit box receipt and not the key--was uncovered during the initial phase of the search June 22nd search.[2] (Id.). Claimants have not challenged the legality of the 4:55 p.m. search. (Id.).

In their reply memorandum, claimants do not dispute, or even address, the government's arguments that the allegedly tainted evidence could be excised from the affidavit supporting the June 23rd warrant. They argue instead that because "[t]he second warrant <u>contained</u> evidence that was tainted by an illegal search," the government did not have probable cause to seize the $50,000. (Claimants' Reply at 3 (emphasis added)). Unfortunately for claimants, as discussed above, the law does not

---

showing numerous deposits in even dollar amounts such as $1,000, $300, and $500, and <u>a receipt for a safe deposit box in the name of Shane Welch held at Washington Mutual Bank</u>." (Pl.'s Opp'n to Mot. for Summ. J. Attach. 1 (App. of Evidence, Easter Aff. in Supp. of Warrant No. 63-11110)) (emphasis added)).

[2] The fact that the police used the key, arguably the fruit of an illegal search, to open the safe deposit box is irrelevant. Pursuant to the June 23rd warrant, issued upon a finding of probable cause, the officers had a right to open the box. Use of the key merely permitted them to do so without damaging the container. Speight v. United States, 671 A.2d 442, 453 n.12 (D.C. 1996).

6

1 automatically void warrants based on affidavits that merely
2 contain tainted evidence.  If, as here, the court can purge the
3 tainted evidence and still find grounds for probable cause in
4 what remains of the affidavit, the validity of the warrant will
5 be upheld.

## III. Conclusion

Claimants' motion for summary judgment is founded on their assumptions that (1) the evidence found after 10 p.m. on June 22, 2004 was illegally seized and (2) this evidence was essential to the magistrate's determination of probable cause for the warrant issued to search the safe deposit box.  In light of this court's determination that evidence obtained while executing the June 23rd warrant for the safe deposit box was not illegally seized, there is no merit to claimants' argument.

IT IS THEREFORE ORDERED that claimants' motion for summary judgment be, and the same hereby is, DENIED.

DATED: October 4, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE